JS 44   (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Monika Vider

**DEFENDANTS**

LMT Real Estate, LLC d/b/a Panache Wood Fire Grill; Ristorante Castello, Inc. d/b/a Ristorante Castello; Chase "Habib" Troudi; and Doe Defendants 1-10

**(b)** County of Residence of First Listed Plaintiff   Montgomery County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Montgomery County
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Connolly Wells & Gray, LLP
Gerald D. Wells, III
2200 Renaissance Blvd., Suite 275
King of Prussia, PA 19406   Telephone: 610-822-3700

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government
Plaintiff

☒ 3   Federal Question
*(U.S. Government Not a Party)*

☐ 2   U.S. Government
Defendant

☐ 4   Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*   and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury - Product Liability<br>☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 835 Patent - Abbreviated New Drug Application<br>☐ 840 Trademark | ☐ 375 False Claims Act<br>☐ 376 Qui Tam (31 USC 3729(a))<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV |
| **REAL PROPERTY** | | | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ Exchange |
| | | | ☒ 710 Fair Labor Standards Act<br>☐ 720 Labor/Management Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement Income Security Act | ☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information Act |

| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | | |
|---|---|---|---|---|
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 448 Education | **Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee - Conditions of Confinement | | **FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration<br>☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>☐ 950 Constitutionality of State Statutes |
| | | | **IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1   Original Proceeding
☐ 2   Removed from State Court
☐ 3   Remanded from Appellate Court
☐ 4   Reinstated or Reopened
☐ 5   Transferred from Another District *(specify)*
☐ 6   Multidistrict Litigation - Transfer
☐ 8   Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
29 U.S.C. 201 et seq.
Brief description of cause:
Claim for unpaid wages brought pursuant to the Fair Labor Standards Act, 29 U.S.C. 201 et seq.

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE

DOCKET NUMBER

DATE
05/13/2019

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #            AMOUNT            APPLYING IFP            JUDGE            MAG. JUDGE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| MONIKA VIDER, on behalf of herself and all others similarly situated, | : | CIVIL ACTION |
| v. | : | |
| LMT REAL ESTATE, LLC d/b/a PANACHE WOOD FIRE GRILL, et al. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.                    ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.                    ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)                    ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.           (X)


| | | |
|---|---|---|
| May 13, 2019 | Gerald D. Wells, III | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 610-822-3700 | 610-822-3800 | gwells@cwglaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**DESIGNATION FORM**

*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: C/O Connolly Wells & Gray, LLP 2200 Renaissance Blvd., Suite 275, King of Prussia, PA 19406

Address of Defendant: 602 Skippack Pike, Blue Bell, PA, 19422

Place of Accident, Incident or Transaction: 602 Skippack Pike, Blue Bell, PA 19422

---

**RELATED CASE, IF ANY:**

Case Number: _____  Judge: _____  Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes ☐  No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes ☐  No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 05/13/2019 _____  88277

_Attorney-at-Law / Pro Se Plaintiff_    _Attorney I.D. # (if applicable)_

---

**CIVIL: (Place a √ in one category only)**

A. *Federal Question Cases:*

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Patent
- ☐ 6. Labor-Management Relations
- ☐ 7. Civil Rights
- ☐ 8. Habeas Corpus
- ☐ 9. Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☑ 11. All other Federal Question Cases
  *(Please specify):* Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, et seq.

B. *Diversity Jurisdiction Cases:*

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify):* _____
- ☐ 7. Products Liability
- ☐ 8. Products Liability – Asbestos
- ☐ 9. All other Diversity Cases
  *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**

*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, Gerald D. Wells, III _____, counsel of record *or* pro se plaintiff, do hereby certify:

- ☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

- ☐ Relief other than monetary damages is sought.

DATE: 05/13/2019 _____  88277

_Attorney-at-Law / Pro Se Plaintiff_    _Attorney I.D. # (if applicable)_

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| MONIKA VIDER, on behalf of herself and all others similarly situated, | ) )  ) |
|  | ) Civil Action No.: |
| Plaintiff, | ) ) |
|  | ) |
| v. | ) **CLASS AND COLLECTIVE** |
|  | ) **ACTION COMPLAINT** |
| LMT REAL ESTATE, LLC d/b/a PANACHE | ) |
| WOOD FIRE GRILL; RISTORANTE | ) |
| CASTELLO, INC. d/b/a RISTORANTE | ) **JURY TRIAL DEMANDED** |
| CASTELLO; CHASE "HABIB" TROUDI; and | ) |
| DOE DEFENDANTS 1-10. | ) |
|  | ) |
| Defendants. | ) |
|  | ) |

Plaintiff Monika Vider ("Plaintiff"), on behalf of herself and all others similarly situated,

alleges as follows:

**INTRODUCTION**

1.      This is a class and collective action brought on behalf of "Tipped Employees"

who work or have worked at restaurants owned, operated and/or otherwise controlled by

Defendants LMT Real Estate, LLC ("LMT"), Ristorante Castello, Inc., and Chase "Habib Troudi

(collectively "Defendants"), including but not limited to Panache Wood Fire Grill ("Panache")

and Ristorante Castello ("Castello") (together, the "Restaurants") and have been subject to the

unlawful practices detailed herein.

2.      As detailed below, upon information and belief, each of the Restaurants implicate

common ownership and share the same employment policies, including those relating to the

compensation of Tipped Employees.

3.      As such, upon information and belief, the employment practices complained of

herein occurred at each of the Restaurants, as Defendants utilized common labor policies and

practices at the Restaurants. Accordingly, Defendants are responsible for the employment practices complained of herein.

4.      Defendants employ individuals in a tipped capacity, namely "bartenders," "servers" ("waiters and "waitresses"), "bussers," and "food runners" (collectively, "Tipped Employees"), who are and/or were subjected to Defendants' unlawful pay practices. As Tipped Employees, these individuals were primarily responsible operating the "front of the house" and interacting with customers, including taking customers' orders, serving them their food/drink, and removing the used plates/glasses after the customers was done eating/drinking.

5.      As explained in detail below, Defendants systematically and willfully deprived Plaintiff and other Tipped Employees of minimum wages in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, ("FLSA"), the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. § 333.101, *et seq.*, the Wage Payment and Collection Law, 43 Pa. S. § 260.1, *et seq.,* ("WPCL"), and Pennsylvania common law[1] by, among other things, failing to satisfy the notice requirements of the tip credit provisions of the FLSA and PMWA.

6.      Due to Defendants' unlawful failure to properly inform Tipped Employees of its intention to utilize a "tip credit", Defendants have improperly applied a "tip credit" against the wages paid to Plaintiff and current and former Tipped Employees, thus paying them less than the mandated minimum wage.

7.      In addition, Defendants violated the PMWA and WPCL when they required Plaintiff and other Tipped Employees to perform numerous job duties when there was no possibility for that employee to generate tips, such as before the restaurant opened or after it had closed or when a Tipped Employee was "cut" for the night (*e.g.*, they were no longer responsible

---

[1] The PMWA, WPCL, and Pennsylvania common law are collectively referred to herein as "PA State Laws."

for serving customers and instead had to perform solely cleaning/stocking work). This is in contravention of applicable Pennsylvania state law.

8.      Further, Defendants required Plaintiff and current and former Tipped Employees to perform numerous non-tipped duties that are unrelated to their tipped occupation. This includes but is not limited to, cleaning the restaurant, taking out trash, slicing fruits, rolling silverware, restocking bins, filling ice bins and setting up/breaking down prep stations. Notably, much of this work was performed either before or after the restaurant opened/closed, necessarily meaning that Plaintiff and other Tipped Employees could not receive tips during this time.

9.      Despite performing this unrelated non-tipped work, Defendants paid Plaintiff and current and former Tipped Employees a sub-minimum wage for performing this work.

10.      Finally, as set forth below, Plaintiff and other Tipped Employees were denied monies due and owing to them due to Defendants' practice of collecting and retaining tips that were meant for distribution to other Tipped Employees.

11.      As a result of the aforementioned pay practices, Plaintiff and the members of the Classes (defined below) were illegally under-compensated for their work.

### SUMMARY OF CLAIMS

12.      Plaintiff brings this action as a collective action to recover unpaid wages, pursuant to the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq*. ("FLSA" or the "Act").

13.      In particular, Plaintiff brings this suit on behalf of the following similarly situated persons:

> All current and former Tipped Employees who have worked for Defendants in the United States within the statutory period covered by this Complaint and elect to opt-in to this action pursuant to the FLSA, 29 U.S.C. § 216(b) (the "Collective Class").

3

14.     In addition, Plaintiff also brings this action as a state-wide class action to recover unpaid wages pursuant to the PA State Laws.

15.     Specifically, Plaintiff brings this suit on behalf of a class of similarly situated persons composed of:

> All current and former Tipped Employees who have worked for Defendants in the Commonwealth of Pennsylvania during the statutory period covered by this Complaint (the "PA Class").

16.     The Collective Class and the PA Class are hereafter collectively referred to as the "Classes."

17.     Plaintiff alleges on behalf of the Collective Class that they are: (i) entitled to unpaid minimum wages from Defendants for hours worked for which Defendants failed to comply with the notice provisions of the tip credit and pay the mandatory minimum wage, as required by law and (ii) entitled to liquidated damages pursuant to the FLSA, 29 U.S.C. § 201 *et seq.*

18.     Plaintiff alleges on behalf of the PA Class that Defendants violated the PA State Laws by failing to comply with the tip credit provisions, as required by law, and consequently failing to pay them the appropriate minimum wages for all hours worked. In addition, Defendants also violated PA State Laws by failing to pay PA Class members the full minimum wage for time spent performing non-tip generating work. Lastly Defendants violated the PA State Laws by improperly retaining portions of gratuities earned by Tipped Employees.

## **PARTIES**

19.     Plaintiff Monika Vider ("Plaintiff" or "Vider") is a resident of the Commonwealth of Pennsylvania who was employed by Defendants as a "bartender" at its Panache location. As explained herein, Plaintiff also worked as "server" for a short period of time at this same

4

location. While employed as a Tipped Employee, Defendants failed to compensate Plaintiff properly for all hours worked.

20.     Pursuant to Section 216(b) of the FLSA, Plaintiff has consented in writing to be a plaintiff in this action. Her Consent To Sue form is attached hereto as Exhibit A.

21.     Defendant Panache l LMT Real Estate, LLC is a limited liability company registered in the Commonwealth of Pennsylvania as the owner of the fictitious name Panache Panache Wood Fire Grill ("Panache"). LMT's corporate address is located at 602 Skippack Pike in Blue Bell, Pennsylvania, which is the address of Panache. During the statutory period covered by this Complaint, Defendant employed Tipped Employees at this location operating under the fictious name Panache Wood Fire Grill. Moreover, Defendant Panache also transacted business within the Commonwealth of Pennsylvania, including within this district.

22.     Defendant Ristorante Castello, Inc. ("Ristorante Castello") does business as "Ristorante Castello" and is located in 721 Skippack Pike in Blue Bell, Pennsylvania. During the statutory period covered by this Complaint, Defendant employed Tipped Employees at this location. Moreover, Defendant Ristorante Castello also transacted business within the Commonwealth of Pennsylvania, including within this district.

23.     Defendant Chase "Habib" Troudi ("Troudi") is, upon information and belief, a resident of the Commonwealth of Pennsylvania. Upon information and belief, Defendant Troudi is the primary shareholder in LMT, and President of Ristorante Castello. Defendant Troudi owns, operators and/or otherwise controls the Restaurants.

24.     Indeed, the website, www.panachewoodfiregrill.com, identifies Habib Troudi as the "owner" of the Panache Wood-Fire Grill and Ristorante Castello. *See*

www.panachewoodfiregrill.com/about-panache/ (last visited March 7, 2019). Moreover, According to an available health inspection reports, "Chace Troudi" is the owner of Castello.

25.    In his capacity as owner and operator, Defendant Troudi exercises sufficient control over the labor policies and practices of the Restaurants complained of herein to be considered the employer of Plaintiff and the Classes for purposes of the FLSA and PA State Laws.

26.    Evidencing the interrelation and unified operation of the Restaurants is the fact the website for each respective Restaurant invites visitors to visit "our other restaurant" which is a hyperlink to the other Restaurant. Moreover, consumers may purchase a single gift card that pictures the logos of both Panache and Castello.

27.    At all relevant times during the statutory period covered by this Complaint, Defendants have transacted business within the Commonwealth of Pennsylvania, including within this district.

28.    At all relevant times during the statutory period covered by this Complaint, Defendants have operated as a "single enterprise" within the definition of Section 203(r)(1) of the FLSA. Defendants uniformly operated its restaurants under common control for a common business purpose.

29.    Defendants are a single and joint employer with a high degree of interrelated and unified operations. Upon information and belief, Defendants share common management between restaurant locations, share common employees between locations, as well as share common human resources and payroll services.

30.    Upon information and belief, all of Defendants' locations share the common labor policies and practices complained of herein.

31.     Upon information and belief, the sole reason for separate corporate entities was to limit the liability of Defendants. Evidencing the interrelation and unified operation of the Defendants' entities, each of the entities references the other on its respective websites.

32.     Plaintiff is unaware of the names and the capacities of those defendants sued as DOES 1 through 10 but will seek leave to amend this Complaint once their identities become known to Plaintiff. Plaintiff believes there are additional entities employing Tipped Employees that have not yet been identified. Upon information and belief, Plaintiff alleges that at all relevant times each defendant was the officer, director, employee, agent, representative, alter ego, or co-conspirator of each of the Defendants. In engaging in the alleged conduct herein, defendants acted in the course, scope of, and in furtherance of the aforementioned relationship.

## JURISDICTION AND VENUE

33.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 201 *et seq*.

34.     Further, this Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because those claims derive from a common nucleus of operative facts.

35.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(ii) as a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this judicial district, and Defendants are subject to personal jurisdiction in this district.

36.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## FACTUAL ALLEGATIONS

37.     The crux of the FLSA and the PA State Laws is, *inter alia*, that all employees are entitled to be paid mandated minimum wages for all hours worked.

7

38.     Contrary to these basic protections, Plaintiff and the members of the Classes were deprived of the mandated minimum wage for all hours they worked.

39.     Plaintiff and the members of the Classes are, or were, Tipped Employees employed by Defendants.

40.     Upon information and belief, all of the Defendants' locations are/were operated under uniform policies/procedures applicable to all members of the Classes, including subjecting Tipped Employees to the unlawful pay practices complained of herein.

41.     As such, upon information and belief, the employment practices complained of herein occurred at all of Defendants' locations as Defendants utilized common labor policies and practices at each of their locations. Accordingly, Defendants are responsible for the employment practices complained of herein.

**Plaintiff's Experience Working For Defendant**

42.     As set forth above, Plaintiff was employed by Defendants as a "bartender" in their Panache location in the Commonwealth of Pennsylvania. Plaintiff worked at this location from in or about August 18, 2018 through February 27, 2019.

43.     In addition to being employed as a "bartender," Plaintiff also worked as a "server" for approximately one month during the holiday season at Panache.

44.     Plaintiff was paid an hourly cash wage rate from Defendants and earned tips from customers who chose to leave a gratuity.

45.     When working as a bartender, Plaintiff split her tips with the other bartenders, if any, who were working with her. When working as a server, Plaintiff was not required to split her tips with anyone. Rather, Defendants required her to tip out to the following groups of

employees if they were working with her: bartenders, bussers, and/or food runners. Indeed, servers were instructed to tip out 5% of their total sales to bartenders.

46.     Thus, although Plaintiff and the other bartenders were supposed to receive tips from servers, Plaintiff and other Tipped Employees did not receive said tips. When Tipped Employees inquired, Defendants would simply state that the employees owe for credit card processing fees.

47.     Plaintiff's hourly wage rate from Defendants was $2.83 an hour. Plaintiff does not ever recall the hourly wage being raised by Defendants above $2.83 for any day worked, irrespective of how little tips were earned or the type of work performed.

48.     Plaintiff typically worked a double shift for Defendants on Mondays, arriving at 10:30 a.m. and leaving anywhere from 10:30 p.m. to midnight, and Thursday nights from 3:30 p.m. to closing, typically leaving anywhere between midnight and 2:00 a.m.

49.     In addition to working these two days, Plaintiff also worked several other days per week. In total, she typically worked three to four days per week and averaged between thirty (30) and thirty-three (33) hours per work. She typically had off from work on Tuesdays.

50.     Plaintiff recalls that for approximately the last month of her employment, Defendants had Plaintiff working Wednesday evenings with her typical start time being 3:30 p.m. and her typical end time being anywhere between 10:30 p.m. and midnight.

51.     If she worked Sundays, her hours were typically 10:30 a.m. to 11:30 p.m. and, if she worked Fridays or Saturdays, her hours were typically 3:30 p.m. to 2:00 a.m.

52.     Plaintiff recorded her work time by logging into Defendants' timekeeping system through the point-of-sale ("POS") system. Plaintiff believes the timekeeping system was called "Dinerware."

53.     Notably, Plaintiff was never instructed to clock in under a different job code when performing non-tip generating work (such as set up or breakdown work at the start or end of a shift) or when working prior to or after the restaurant opened/closed. Indeed, to the best of Plaintiff's knowledge, Defendants did not keep track of such time separately from Plaintiff's entries into the POS system.

54.     The precise amount of time Plaintiff recorded as working each week, upon information and belief, is maintained in Defendants' employment and/or payroll records.

55.     While employed by Defendants, Plaintiff typically came in approximately one-half hour before the start of her shift (or prior to the restaurant opening if she was working an opening shift) to perform numerous assigned tasks to Tipped Employees including: cutting fruit, getting the bar set up, fill the menu bins, finalize anything not done the night before.

56.     When closing Panache, Plaintiff typically stayed one hour after Panache closed and/or the last customer left. During this time, Plaintiff performed numerous closing tasks including: cleaning the bar bottles, wash the bar glasses, bring the dirty dishes to the kitchen, restock the beer, wine, and liquor, take out the trash, wash the bar matts, clean the cooler, and perform other related closing tasks.

57.     Due to her long hours of working, Defendants offered Plaintiff and other Tipped Employees 50% off certain food items.[2]

---

[2] To the extent Defendants took or claim any meal credit, this may also constitute a violation of applicable wage laws as an employer who claims a meal credit cannot make any profit from a meal provided to an employee. *See, e.g., Chen v. Century Buffet & Rest.*, No. 09-1687, 2012 U.S. Dist. LEXIS 4214, *15 (D. N.J. Jan. 12, 2012)("The reasonable cost of meals cannot be more than the actual cost and must not include any profit to the employer"); 29 C.F.R. § 531.3(a) ("The term reasonable cost as used in section 3(m) of the Act is hereby determined to be not more than the actual cost to the employer").

**The Tip Credit Provision & Requirements**

*FLSA Requirements*

58.    Rather than pay its Tipped Employees the applicable minimum wage (either the applicable state minimum wage or the federal minimum wage, whichever is higher), Defendants chose to take a tip credit and pay these employees less than the applicable minimum wage.

59.    Under applicable law, in certain circumstances, it is permissible for an employer to take a tip credit and pay its employees less than the mandated minimum wage, provided that the employee's tips received from customers plus the cash wage paid by the employer equals at least the applicable minimum wage.[3]

60.    According to the Department of Labor's ("DOL") Fact Sheet #15: Tipped Employees Under the Fair Labor Standards Act (FLSA) ("Fact Sheet #15"):

> the maximum tip credit that an employer can currently claim under the FLSA is $5.12 per hour (the minimum wage of $7.25 minus the minimum required cash wage of $2.13).

61.    As is made plain in Fact Sheet #15, in order to claim a tip credit, the employer must comply with five strict notification requirements.

62.    First, the employer must notify the employee of the amount of the cash wage the employer is paying the Tipped Employee and that amount must equal at least $2.13 per hour.

---

[3] An employer is not relieved of their duty to pay an employee wages at least equal to the minimum wage by virtue of taking a tip credit or by virtue of the employee receiving tips from customers in an amount in excess of the applicable minimum wage. That is, an employer in the restaurant industry must pay the employee wages at least equal to the minimum wage or equal to the minimum wage less the tip credit, provided the tips claimed exceed the tip credit. Under no circumstances is the employer relieved of paying at least the minimum wage for all hours worked, regardless of how much an employee earns in tips.

63.     Second, the employer must notify the Tipped Employee of the amount the employer is claiming as a tip credit. In accordance with the FLSA, the tip credit claimed cannot exceed $5.12 per hour.

64.     Third, the employer must inform the Tipped Employee that the tip credit claimed cannot exceed the actual amount of tips received by the employee. In effect, the employer must inform the employee that the employee must still earn the mandated minimum of $7.25 per hour between the amount of the tip credit taken by the employer and the amount of tips earned by the employee.

65.     Fourth, the employer must notify the Tipped Employee that all tips received are to be retained by the employee except for a valid tip pooling arrangement.

66.     Finally, the Tipped Employee must be informed by the employer that the tip credit will not apply unless the employee has been informed of these provisions.

67.     In short, Fact Sheet #15 effectively sets forth in plain English what is required under the regulations, including 29 C.F.R. § 531.59(b), for an employer to properly claim a tip credit.

68.     An employer bears the burden of showing that it has satisfied all of the notification requirements before any tips can be credited against the employee's hourly wage.[4] If an employer cannot demonstrate its compliance with this notification requirement, no credit can be taken and the employer is liable for the full minimum wage.

69.     Further, where a tipped employee earns less in tips than the tip credit claimed, the employer is required to make up the difference. Stated another way, if a tipped employee earns

---

[4] Courts have strictly construed this notification requirement. Accordingly, some courts have held that a generic governmental poster (which is required by the DOL) does not satisfy the tip credit notification requirement.

less than $5.12 per hour in tips (the maximum tip credit permissible where the employer pays the employee $2.13 per hour), the employer must raise that tipped employee's hourly cash component the necessary amount above $2.13 per hour so as to ensure that the employee earns at least $7.25 per hour – the mandated minimum wage.

70.    As set forth herein, Defendants failed to comply with certain of the FLSA's provisions regarding the claiming of a tip credit.

***Pennsylvania's Requirements***

71.    Pennsylvania state law has a substantially similar requirement to the FLSA's tip notification requirements. *See* 43 P.S. § 333.103(d).

72.    Importantly, however, Pennsylvania mandates a higher minimum cash wage and requires employers to pay at least $2.83 per hour. Thus, under Pennsylvania law, the maximum tip credit is $4.42 per hour.[5]

73.    As such, an employer cannot be said to have complied with Pennsylvania's tip credit notification requirements where the employer simply relies on United States Department of Labor mandated posters, as said posters do not explicitly identify the tip credit amount in Pennsylvania (as it differs from the FLSA tip credit amount).

74.    In addition, 34 Pa. Code § 231.34 also requires employers to maintain payroll records that contain the following information:

(1) A symbol or letter placed on the pay records identifying each employee whose wage is determined in part by tips;

(2) Weekly or monthly amount reported by the employee, to the employer, of tips received. This may consist of reports made by the employees to the employer on IRS Form 4070;

---

[5] Like the FLSA, Pennsylvania law states that the tip credit claimed by the employer cannot exceed the amount of tips actually received by the employee. *See* 43 P.S. § 333.103(d).

(3) Amount by which the wages of each tipped employee have been deemed to be increased by tips, as determined by the employer, not in excess of 45% of the applicable statutory minimum wage until January 1, 1980 and thereafter 40% of the applicable statutory minimum wage. The amount per hour which the employer takes as a tip credit shall be reported to the employee in writing each time it is changed from the amount per hour taken in the preceding week;

(4) Hours worked each workday in any occupation in which the tipped employee does not receive tips and total daily or weekly straight-time payment made by the employer for such hours; and

(5) Hours worked each workday in occupations in which the employee received tips and total daily or weekly straight-time earnings for the hours.

### **Defendants' Failure To Comply With Applicable Wage Laws**

75.     As explained above, the DOL has very specific requirements regarding what an employer must notify his/her employee of if that employer intends to claim a tip credit.

76.     Rather than comply with the notification requirements set forth in the regulations and made plain in Fact Sheet #15, Defendant chose to simply pay their Tipped Employees $2.83 per hour. In short, Defendants failed to conform to the strict regulatory requirements necessary to satisfy the tip credit notification provisions.

77.     The Third Circuit and district courts across the country have held that where an employer fails to satisfy any one of the notification requirements, the employer forfeits the tip credit and must pay the employee the full minimum wage.

78.     Indeed, Plaintiff does not ever recall being notified by Defendants that it intended to take a "tip credit," nor how much that amount would be. Evincing the magnitude of

Defendant's abject failure to notify Tipped Employees of their intention to take a tip credit, until recently, Plaintiff never even heard the term "tip credit."

79.     Further indicative of Defendants' wholesale violation of the applicable tip credit provisions, on several instances Defendants required Plaintiff to forfeit a portion of her tips to cover cash shortages in one of the bar's cash registers. As set forth above, an employer cannot claim a tip credit if it requires employees to forfeit a portion of their tips to anything other than a valid tip pool. *See, e.g.,* Fact Sheet #15.

80.     With respect to her forfeiting her tips illegally, Plaintiff recalls three distinct instances where this occurred and believes it occurred on three consecutive Mondays. In each instance, Plaintiff believes that Defendants required her to forfeit approximately $10 each time. Indeed, Plaintiff recalls complaining to a manager who simply responded that the "drawer has to be right."

81.     Defendants also failed to comply with 43 P.S. 231.34 insofar as it failed to notify employees in writing whenever the tip credit claimed by Defendants changed. Rather, Defendants took the maximum tip credit permissible irrespective of whether its Tipped Employee actually earned sufficient tips to substantiate the tip credit claimed.

82.     Defendants also failed to comply with 43 P.S. 231.34 insofar as it failed to notify employees in writing of the hours worked where the Tipped Employee did not receive tips. Rather, Defendants took the maximum tip credit permissible for every hour worked by its Tipped Employees, including Plaintiff, irrespective of whether its Tipped Employees (i) actually earned sufficient tips to substantiate the tip credit claimed or (ii) whether the employees were engaged in tip generating work.

83.     Indeed, Defendants violated applicable Pennsylvania wage laws by requiring Tipped Employees, including Plaintiff, to be paid a sub-minimum wage for work performed when the Tipped Employee had no opportunity to generate tips, such as before or after the restaurant was opened/closed to the public. At no time did Defendants have Plaintiff or other Tipped Employees clock in under a different code or pay these individuals the full minimum wage, instead electing to continue to pay them the minimum cash wage and continuing to claim the tip credit despite the fact that these employees could not earn tips during this time.

84.     Such conduct constitutes a violation of 43 P.S. 231.34 insofar as Defendants failed to record the hours where Plaintiff and the other Tipped Employee were engaged in non-tip generating work.

85.     Because of the above violations, **Defendants owe Plaintiff** and the other Tipped Employees **$4.42 for every hour they worked** and were only paid $2.83 per hour. Thus, the amounts due and owing are significant.

86.     Moreover, as set forth above, Defendants collected and retained tips that were otherwise meant for distribution to Plaintiff and the other Tipped Employees.

87.     While an employer is permitted to deduct for credit card processing fees of tips left to employees from customers, the employer cannot deduct for processing fees for those portions of the bill attributable to them (e.g., the non-tip portion of the bill) nor can an employer estimate or approximate the amount of the processing fee attributable to the employee. Stated another way, an employer cannot profit from this deduction.

88.     Because bartenders were owed 5% of the sales total in tip outs from servers and received no tip outs at all, upon information and belief, Defendants were retaining a portion of the employees' tips under illegal, unjust, and inequitable circumstances.

## CLASS & COLLECTIVE ACTION ALLEGATIONS

89.     Plaintiff brings this action on behalf of the Collective Class as a collective action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 207 and 216(b). Plaintiff also brings this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and the PA Class for claims under the PA State Laws.

90.     The claims under the FLSA may be pursued by those who opt-in to this case pursuant to 29 U.S.C. §216(b). The claims brought pursuant to the PA State Laws may be pursued by all similarly-situated persons who do not opt-out of the PA Class pursuant to Fed. R. Civ. P. 23.

91.     Upon information and belief, the members of each of the Classes are so numerous that joinder of all members is impracticable. While the exact number of the members of these Classes is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, given that Defendants operate multiple restaurants, there are likely dozens of individuals in each of the Classes.[6]

92.     Defendants have acted or has refused to act on grounds generally applicable to the Classes, thereby making final injunctive relief or corresponding declaratory relief with respect to the Classes as a whole, appropriate.

93.     The claims of Plaintiff are typical of the claims of the Classes she seeks to represent. Plaintiff and the members of the Classes work or have worked for Defendants and were subject to the same compensation policies and practices.

---

[6] Indeed, Plaintiff estimates that while she was employed at Panache, there were twenty to twenty-five Tipped Employees scheduled to work on a typical Thursday, Friday, or Saturday night shift.

94.     Common questions of law and fact exist as to the Classes that predominate over any questions only affecting them individually and include, but are not limited to, the following:

(a)     whether Defendants have failed to pay the full minimum wage for each hour worked;

(b)     whether Defendants satisfied each of the requirements in order to claim a tip credit against each hour worked;

(c)     whether Defendants were precluded from claiming the tip credit during the period encompassed by this Complaint; and

(d)     whether Plaintiff and members of the Classes are entitled to compensatory damages, and if so, the means of measuring such damages.

95.     Plaintiff will fairly and adequately protect the interests of the Classes as her interests are aligned with those of the members of the Classes. Plaintiff has no interests adverse to the Classes she seeks to represent and has retained competent and experienced counsel.

96.     The class action/collective action mechanism is superior to other available methods for a fair and efficient adjudication of the controversy. The damages suffered by individual members of the Classes may be relatively small when compared to the expense and burden of litigation, making it virtually impossible for members of the Classes to individually seek redress for the wrongs done to them.

97.     Plaintiff and the Classes she seeks to represent have suffered and will continue to suffer irreparable damage from the illegal policy, practice and custom regarding Defendants' pay practices.

98.    Defendants have violated and, continue to violate, the FLSA, 29 U.S.C. §§ 201 *et seq.* The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a) and willful violation of the PMWA.

**FIRST CLAIM FOR RELIEF**
**FAIR LABOR STANDARDS ACT MINIMUM WAGE VIOLATIONS**
**(On Behalf of the Collective Class)**

99.    Plaintiff, on behalf of herself and the Collective Class, realleges and incorporates by reference the paragraphs above as if they were set forth again herein.

100.    At all relevant times, Defendants has had gross revenues in excess of $500,000.

101.    At all relevant times, Defendants have been and continues to be, an employer engaged in interstate commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

102.    At all relevant times, Defendants have employed, and/or continues to employ, Plaintiff and each of the Collective Class Members within the meaning of the FLSA.

103.    Pursuant to Defendants' compensation policies, rather than pay Tipped Employees the federally-mandated minimum wage, Defendants took a tip credit and paid Tipped Employees only the tip-credit wage.

104.    Defendants have violated and, continues to violate, the FLSA, 29 U.S.C. §§ 201 *et seq.* The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

105.    Due to Defendants' FLSA violations, Plaintiff, on behalf of herself and the members of the Collective Class, are entitled to recover from the Defendants, compensation for unpaid wages; an additional equal amount as liquidated damages; and reasonable attorneys' fees and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b)..

## SECOND CLAIM FOR RELIEF
## PENNSYLVANIA MINIMUM WAGE ACT– MINIMUM WAGE VIOLATIONS
### (On Behalf of the PA Class)

106.    Plaintiff, on behalf of herself and the members of the PA Class, realleges and incorporates by reference the paragraphs above as if they were set forth again herein.

107.    At all relevant times, Defendants have employed, and/or continues to employ, Plaintiff and each of the PA Class Members within the meaning of the PMWA.

108.    Pursuant to Defendants' compensation policies, rather than pay Tipped Employees the Pennsylvania mandated minimum wage, Defendants improperly took a tip credit and paid Tipped Employees at a rate well below the Pennsylvania minimum wage.

109.    Pursuant to Defendants' compensation policies, rather than pay Tipped Employees the required minimum wage in Pennsylvania, Defendants took a tip credit and paid Tipped Employees only the tip-credit wage.

110.    As a result of Defendants' willful practices, Defendants were not entitled to claim the tip credit and pay Plaintiff and the members of the PA Class less than the Pennsylvania minimum wage for all hours worked.

111.    Defendants have violated and, continue to violate, the PMWA, 43 Pa. C.S.C. § 333.101 *et seq.*

112.    Due to the Defendants' violations, Plaintiff, on behalf of herself and the members of the PA Class, are entitled to recover from Defendants the amount of unpaid minimum wages, attorneys' fees and costs.

### THIRD CLAIM FOR RELIEF
### PENNSYLVANIA WAGE PAYMENT COLLECTION LAW
#### (On Behalf of the PA Class)

113.    Plaintiff, on behalf of herself and the members of the PA Class, realleges and incorporate by reference the paragraphs above as if they were set forth again herein.

114.    At all relevant times, Defendants have employed, and/or continues to employ, Plaintiff and each of the PA Class Members within the meaning of the WPCL.

115.    Pursuant to the WPCL, 43 Pa. S. § 260.1 *et seq.* Plaintiff and the members of the PA Class were entitled to receive all compensation due and owing to them on their regular payday.

116.    As a result of Defendants' unlawful policies, Plaintiff and the members of the PA Class have been deprived of compensation due and owing.

117.    Indeed, it is black letter law that an employee cannot voluntarily agree or contract to be paid less than the legal minimum wage for each hour worked. Accordingly, at a minimum, an employee must contract to be paid at least the minimum wage for each hour worked. Through the practices described above, Defendants paid Plaintiff and other Tipped Employees less than the legal minimum wage for each hour worked.

118.    Moreover, Plaintiff and the members of the PA Class agreed to be paid, in part, with tips left for one Tipped Employee and shared with others. As set forth above, Defendants had a policy, practice, and/or procedure whereby employees were not paid all the tips due and owing to them as part of this tip pool.

119.    Plaintiff, on behalf of herself and the members of the PA Class, are entitled to recover from Defendants the amount of unpaid compensation, and an additional amount of 25% of the unpaid compensation as liquidated damages.

## FOURTH CLAIM FOR RELIEF
## COMMON LAW – UNJUST ENRICHMENT
### (On Behalf of the PA Class)

120.    Plaintiff, on behalf of herself and the members of the PA Class, realleges and incorporate by reference the paragraphs above as if they were set forth again herein.

121.    Plaintiff and the members of the PA Class were employed by Defendants.

122.    At all relevant times, Defendants had a willful policy and practice of denying Tipped Employees their full share of gratuities.

123.    During the class period covered by this Complaint, Plaintiff and Tipped Employees were subjected to unlawful deductions from their gratuities.

124.    Defendants retained the benefits of its unlawful deductions from the gratuities from Plaintiff and Tipped Employees under circumstances which rendered it inequitable and unjust for Defendants to retain such benefits.

125.    Defendants were unjustly enriched by subjecting Plaintiff and Tipped Employees to such unlawful deductions.

126.    As direct and proximate result of Defendant's unjust enrichment, Plaintiff and the members of the PA Class have suffered injury and are entitled to reimbursement, restitution and disgorgement from Defendants of the benefits conferred by Plaintiff and the PA Class.

127.    Plaintiff, on behalf of herself and the members of the PA Class, are entitled to reimbursement, restitution and disgorgement of monies received by Defendants

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and/or on behalf of herself and all other similarly situated members of the Collective Class and members of the PA Class respectfully requests the Court grant the following relief:

A.      Designation of this action as a collective action on behalf of the Collective Class, and prompt issuance of notice pursuant to 29 U.S.C. §216(b), apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. §216(b);

B.      Designation of the action as a class action under F.R.C.P. 23 on behalf of the PA Class;

C.      Designation of Plaintiff as representative of the Collective Class and the PA Class;

D.      Designation of Plaintiff's counsel as class counsel for the Collective Class and the PA Class;

E.      A declaratory judgment that the practices complained of herein are unlawful under the FLSA and PMWA;

F.      An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with it, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

G.      An award of unpaid minimum wages to Plaintiff and the members of the Classes;

H.      An award of liquidated damages to Plaintiff and members of the Classes;

I.      An award of interest to Plaintiff and members of the PA Class;

J.      An award of costs and expenses of this action together with reasonable attorneys' and expert fees to Plaintiff and members of the Classes; and

K.      Such other and further relief as this Court deems just and proper.

### DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all questions of fact raised by the complaint.

Dated: May 13, 2019

Respectfully submitted,

**CONNOLLY WELLS & GRAY, LLP**

By: _____

Gerald D. Wells, III (PA ID # 88277)
Robert J. Gray
2200 Renaissance Blvd., Suite 275
King of Prussia, PA 19406
Telephone: 610-822-3700
Facsimile: 610-822-3800
Email: gwells@cwglaw.com
       rgray@cwglaw.com

**CARLSON LYNCH, LLP**
Gary F. Lynch (PA ID# 56887)
Edward W. Ciolko
Matthew D. Brady
1133 Penn Ave, 5th Floor
Pittsburgh, PA 15222
Telephone: 412-322-9243
Facsimile: 412-231-0246
Email: glynch@carlsonlynch.com
       eciolko@carlsonlynch.com
       mbrady@carlsonlynch.com

*Attorneys for the Plaintiff and*
*the Proposed Classes*

# EXHIBIT A

## CONSENT TO BECOME A PARTY PLAINTIFF

1.      I, MONIKA VIDER, consent to sue as a Plaintiff in this action, pursuant to the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.*

2.      During the applicable period, I was an employee of Defendants and was not paid properly for all hours worked.

3.      By my signature below, I hereby authorize counsel to prosecute the claims in my name and on my behalf, in this action, for Defendants' failure to pay all wages due and owing in accordance with federal law.

4/8/2019
_____
Date

Monika Vider
_____
Print Name

DocuSigned by:

*Monika Vider*
_____
Signature